## FURLOW v. CORINTH STATE BANK et al.
### No. 8062.

Circuit Court of Appeals, Fifth Circuit.
June 22, 1936.

J. L. Roberson and Sam C. Cook, both of Clarksdale, Miss., for appellant.

W. C. Sweat, of Corinth, Miss., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The bill was brought by the receiver of the First National Bank of Corinth, Miss., against Corinth State Bank, both being insolvent and in liquidation, to set aside as an unlawful preference the transfer of certain assets of the National Bank to the State Bank made not in the due course of business and after it was known that the National Bank would not open the next day, and to fix a trust on the funds of the State Bank for such of the transferred assets as were converted into cash. The Corinth State Bank set up that the transferred assets were to secure a draft of $10,787.83 given in the usual course of business by the National Bank to the State Bank in a clearing transaction had on the day in question, in which transaction certain commercial paper, and especially three drafts drawn on Stripling Cotton Company, a customer of the National Bank, which carried warehouse receipts and bills of lading for 230 bales of cotton were turned over to the National Bank while it was open and holding itself out as solvent; and that after banking hours when it was known that the National Bank would not open again and its draft for $10,787.83 would not be paid, the State Bank at once tendered back to the National Bank, its directors being in session, what it had received in the clearing transaction and demanded the restoration of what it had given, but was told that what the National Bank had received had passed out of the bank's hands and could not be restored, and for that reason the draft for $10,787.83 was attempted to be secured. It appears from the stipulated facts that the statements of the bill and answer are in substance true, and that the State Bank also failed to open the day following the transaction described, and that its liquidator received the assets transferred as security and has reduced most of them to cash. There were facts also tending to show that the assets of the National Bank in the receiver's hands had derived benefit from the drafts turned over to it by the State Bank in the clearance. The decree appealed from annuls the transfer of the assets of the National Bank made after its known insolvency as being in violation of 12 U.S.C.A. § 91, but it allows by way of offset an amount of $7,240.13 by which the assets in the receiver's hand were thought to be augmented by the three drafts on Stripling Cotton Company which carried cotton as above stated.

The first error assigned by the receiver is the refusal of the court to allow an amendment of the bill. The amendment set up in substance that the State Bank was never the owner of the three drafts on Stripling Cotton Company aggregating $7,240.13, but had them for collection only, that one of them for $1,520.38 with the 40 bales of cotton it covered belonged to the drawer, J. C. Jordan, and the others for $2,727.50 and $2,992.15 with the 190 bales of cotton they covered belonged to their drawer A. G. Bishop, and the State Bank had no interest in the drafts or their proceeds except to collect them for the drawers. It further alleged that Bishop had a litigation with the receiver in a case reported in Webster v. Bishop (C.C.A.) 76 F.(2d) 831, in which a judgment had been entered in the United States Court for the Western District of Tennessee, having full and complete jurisdiction over the controversy, adjudicating that Bishop at all times owned the drafts. The amendment was meritorious. While for purposes of collection the Corinth State Bank may have had title to the drafts—the record does not disclose the form of indorsement to it—upon its own insolvency its agency to collect stood annulled. Its liquidator had thereafter no right to control the drafts or to trace their proceeds in the assets of the National Bank. It does not appear that by an original purchase of the drafts or by any subsequent settlement with the owners of them the State Bank has any right of property in them, or is authorized to further represent the owners of them. The allegation is positive that it had them only for collection, and that Bishop, the owner of two of them, has asserted his rights as owner against the receiver. If any augmentation of the assets of the National Bank so as to give a lien on them can be proven, the benefit of it belongs to the owners of these drafts and not to the general creditors of the State Bank. That a collecting bank cannot use its agency for collection to offset claims against it asserted by an insolvent bank with which it has dealt is held in Dakin, Rec'r, v. Bayly, Liquidator, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999. On the same line see Dickens v. Howard, Receiver (C.C.A.) 67 F.(2d) 263. The situation here is aggravated by the insolvency of the

collecting agent as above pointed out, because the agent's success now would not inure to the principal but to the agent's general creditors. The amendment ought on its face to have been allowed.

■ The reason given for not allowing it was that it came too late. The bill was filed December 7, 1931; the answer March 8, 1932. A partial stipulation of facts was filed April 10, 1935. A hearing was had on April 30th, and an informal opinion given May 20, but no order or decree entered. The amendment of the bill was offered Aug. 19, 1935. On October 16th the State Bank filed formal objections and on that date the cause was set for a hearing and decision on November 22. On November 22 the amendment was refused and an elaborate decree made containing a recital of additional stipulated facts which do not otherwise appear in the record. There was under Equity Rule 28 (28 U.S.C.A. following section 723) no right as of course to amend the bill after answer; and in general an amendment not merely formal will not be allowed after the cause is set for hearing or has been heard. Walden v. Bodley, 14 Pet. 156, 10 L.Ed. 398; Snead v. McCoull, 12 How. 407, 13 L.Ed. 1043. If the amendment had been one relating to the original cause of action and changing it the refusal would have been well within the discretion of the court. But it is in substance a reply to what is really a counterclaim set up in the answer. The proposed pleading, though in form an amendment of the bill, really affects not the complainant's right to set aside the transfer of his bank's assets, but affects only the cross-right of the State Bank to trace the cotton drafts. Whether as an amendment or a reply Equity Rule 19 (28 U.S.C.A. following section 723) permits its allowance under the broad language: "The court may at any time, in furtherance of justice, upon such terms as may be just, permit any process, proceeding, pleading or record to be amended, or material supplemental matter to be set forth in amended or supplemental pleading. The court, at every stage in the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." One of the things set up by this amendment was the assertion by Bishop in the United States Court in Tennessee of his rights as owner of two of the drafts. The date of the decision in Webster v. Bishop

(C.C.A.) 76 F.(2d) 831 referred to in the pleading is April 19, 1935; and this matter was therefore supplemental, having just occurred. Furlow, the amending party, had entered this case as successor-receiver only on April 22, 1935. The amendment went to the very heart of the asserted counterclaim. The substantial rights of the parties required its truth to be examined even if there were "defect" in not having presented it earlier. The delay, if unexcused and causing expense, can be punished by the imposition of costs as terms of allowance. We think that justice requires the allowance of the amendment and an investigation of its truth. The decree must be set aside and the case reopened for further evidence.

■ There seems no doubt that the transfer of the assets of the National Bank as security after its known insolvency was void. Kullman & Co. v. Woolley, Rec'r (C.C.A.) 83 F.(2d) 129. Whether the clearing transaction was rescindable as induced by fraud, or as a cash transaction in which the expected cash was not forthcoming, and whether if so the receiver got anything as the consequence of his bank's conversion of the Stripling drafts we express no opinion, both because the present evidence is not clear as to what became of the drafts and what the National Bank got for them, and because if the drafts did not and do not belong to the State Bank there is no need to investigate these questions.

■ It is argued that in Mississippi the agency to collect drafts is turned into a relation of debtor and creditor so soon as collection is made, so that the drawers of these drafts according to Mississippi law only have a claim as creditors of the State Bank and are no longer owners of the drafts or their proceeds; citing Love v. Federal Land Bank, 157 Miss. 52, 127 So. 720; Love v. Fulton Iron Works, 162 Miss. 890, 140 So. 528; Lucas v. Louisville Home Bank, 172 Miss. 614, 160 So. 905. The argument is not conclusive. The State Bank is denying that it ever made collection of the drafts, and saying that it was at first deceived into surrendering them and is now being deprived of the security which it thought it had. It insists that the drafts were not collected, but were converted when not returned. If the State Bank never got anything of value for them, it is difficult to see how it collected them. If any one has collected them it is the National Bank, and the

question in that view would be to whom is that bank accountable, and whether as debtor or trustee. The amendment tenders the issue that the State Bank has no interest in that account. It may be that the State Bank bought the drafts originally, or has since come to own them. If so, it can be shown. For present purposes the statements of the amendment must be taken as the truth.

The judgment is reversed, the decree annulled, and the cause remanded for further proceedings not inconsistent with this opinion.